**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**FORT MYERS DIVISION**

| | | |
|---|---|---|
| NUVASIVE, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Case No. _____ |
| | ) | |
| CHRISTOPHER LeDUFF, GREGORY SOUFLERIS, and ABSOLUTE MEDICAL SYSTEMS, LLC, | ) ) ) | INJUNCTIVE RELIEF SOUGHT |
| | ) | |
| Defendants. | ) | |

## COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

For its Complaint against Defendants, Christopher LeDuff ("LeDuff"), Gregory Soufleris ("Soufleris"), and Absolute Medical Systems, LLC ("Absolute Medical Systems") (collectively, "Defendants"), Plaintiff, NuVasive, Inc. ("NuVasive"), through its attorneys, alleges that:

### NATURE OF ACTION

1. LeDuff, who worked for NuVasive as a sales professional, violated and continues to violate a number of common law and contractual obligations he owes to NuVasive by without limitation, soliciting NuVasive's customers and employees on behalf of a direct competitor. Soufleris and Absolute Medical Systems aided and abetted LeDuff's breaches of his common law obligations to NuVasive and tortiously interfered with the contractual obligations he owes to NuVasive. Accordingly, NuVasive asks this Court to: (1) issue preliminary and permanent injunctions which require LeDuff to comply with his obligations not to solicit NuVasive's employees and customers, and not to compete with

NuVasive within his sales territory; (2) transfer its claims for damages against LeDuff to binding arbitration in San Diego, California; and (3) award it damages against Soufleris and Absolute Medical Systems.

## THE PARTIES

2.  NuVasive is a citizen of Delaware and California.  It is incorporated under the laws of Delaware, and maintains its principal place of business in San Diego, California.

3.  LeDuff is a citizen of Florida who resides in Estero, Florida.

4.  Soufleris is a citizen of Florida who resides in Orlando, Florida.

5.  Absolute Medical Systems is a Florida limited liability company whose members are Soufleris and Elmalem Consulting, LLC.  Upon information and belief, Elmalem Consulting, LLC's sole member is Dan Elmalem who resides in Orlando, Florida.  As such, Absolute Medical Systems is a citizen of Florida.

6.  The relationship between NuVasive and LeDuff is governed by their July 3, 2013, Proprietary Information, Inventions Assignment and Restrictive Covenant Agreement (the "PIIA").  NuVasive attaches a copy of the PIIA as **Exhibit A**.

## JURISDICTION, VENUE, AND GOVERNING LAW

7.  This Court has original jurisdiction of this case under 28 U.S.C. § 1332 because this is a civil action between citizens of different states in which the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

8.  Venue for NuVasive's request for equitable relief and damages is proper in the Middle District of Florida pursuant to 28 U.S.C. § 1391 as: (a) each Defendant resides in

this District; and (b) a substantial part of the events or omissions giving rise to the claims occurred in this District.

9. Pursuant to Section XVI of the PIIA, Florida law governs NuVasive's claims against LeDuff as Florida is the state in which LeDuff last resided while working for NuVasive.

10. Section XIII of the PIIA requires NuVasive and LeDuff to submit all disputes to binding arbitration in San Diego, California, other than requests for injunctive relief which may proceed pending arbitration.

## **ALLEGATIONS RELATING TO ALL COUNTS**

**A.     NuVasive's Business.**

11. NuVasive is an innovative, market-leading, medical device company focused on the design, development, and marketing of products for the surgical treatment of spine disorders.

12. NuVasive markets its surgical products through its exclusive sales force which consists of directly-employed personnel and exclusive sales agents.  NuVasive invests substantial funds into providing this sales force with extraordinary, specialized, comprehensive, and industry-leading training.  This training supplies NuVasive's sales force with a deep understanding of NuVasive's products, methodology, trade secrets, and other valuable confidential or proprietary information.

13. NuVasive invests significant time, money, and resources into its sales personnel so that they are able to favorably represent the company and create goodwill with potential and existing NuVasive customers.  This goodwill, arising from the substantial

3

customer relationships developed between NuVasive's sales personnel and its customers, belongs to NuVasive as it is the product of NuVasive's significant investment.

**B.      LeDuff's Contractual Obligations to NuVasive.**

14.     LeDuff began selling NuVasive's products (through an independent distributor) in January 2009. On or about February 14, 2013, he became employed by NuVasive.

15.     Like all of NuVasive sales professionals, LeDuff received NuVasive's extraordinary, industry-leading training, had access to and knowledge of NuVasive's trade secrets and other proprietary information, and is the face of NuVasive to customers within its sales territory. Accordingly, to protect its legitimate business interests, NuVasive required LeDuff to agree to certain reasonable confidentiality, non-competition, and non-solicitation obligations as a condition of NuVasive allowing him to sell its products. These provisions are found in sections II, VI, and VII.

16.     LeDuff's obligation to protect NuVasive's confidential information is found in Section II of the PIIA. It provides:

> I represent and warrant that from the time of my first contact or communication with the Company, I have held in strict confidence all Proprietary Information and have not disclosed any Proprietary Information to anyone outside of the Company, or used, copied, published, or summarized any Proprietary Information except to the extent necessary to carry out my responsibilities as an employee or agent of the Company.
>
> At all times, both during my engagement by the Company and after its termination, I will (a) keep in confidence and trust and will not disclose any Proprietary Information except to other Company employees, agents and representatives who need to know, or to third parties who are bound by written confidentiality agreements to the extent necessary to carry out my responsibilities as an employee or agent of the Company and in a manner

4

consistent with any such third party confidentiality agreements, and (b) use Proprietary Information only for the benefit of the Company.

Ex. A at § II.

17. LeDuff's contractual obligation not to solicit NuVasive's employees is found in Section VI of the PIIA. It provides:

> I understand that during my engagement with the Company, I will have access to and obtain knowledge of the Company's Proprietary Information (including as defined herein), and that the Company will be irreparably harmed if I were to use that Proprietary Information - whether directly or indirectly – to the detriment of the Company, and its actual or potential business and/or human resources. Therefore, I agree that during the term of my engagement and for one (1) year thereafter, I will not induce or influence, or seek to induce or influence, any person who is employed or engaged by the Company (as an agent, employee, independent contractor, or in any other capacity), or any successor thereto, with the purpose of obtaining such person as an employee or independent contractor for a business competitive with the Company, or causing such person to terminate his or her employment, agency or relationship with the Company, or any successor thereto.

Ex. A at § VI.

18. LeDuff's obligation not to compete with NuVasive is found in Section VII of the PIIA. *See* Ex. A at § VII. In essence, it precludes LeDuff from, during his relationship with NuVasive and for one year after that relationship terminates, working with the Customers (as defined by the PIIA) within his NuVasive sales territory or for whom he provided services during the last year of his NuVasive relationship, on behalf of a Conflicting Organization (as defined by the PIIA).

19. The restrictive covenant described in the preceding paragraph is reasonable because: (a) its temporal restrictions are limited to the term of LeDuff's relationship with NuVasive plus the year after that term concludes; and (b) its geographic restriction is limited to LeDuff's NuVasive sales territory.

**C.     Soufleris and Absolute Medical Systems.**

20.     Prior to forming Absolute Medical Systems, Soufleris represented NuVasive's products in the Central Florida region via Absolute Medical, LLC ("Absolute Medical"), which is a party to an Exclusive Sales Representative Agreement with NuVasive.

21.     Soufleris formed Absolute Medical Systems on November 30, 2017, in an attempt to avoid the contractual obligations he owes to NuVasive via Absolute Medical.[1]

22.     Absolute Medical Systems now represents and distributes products designed and manufactured by NuVasive's direct competitor, Alphatec Spine, Inc. ("Alphatec") throughout the State of Florida and the Southern portion of Georgia.

23.     Alphatec is a "Conflicting Organization" as defined by Section VII of LeDuff's PIIA.

**D.     LeDuff's Breaches of his Common Law and Contractual Obligations.**

24.     In the summer of 2019, LeDuff began to express dissatisfaction with NuVasive to Joseph Farrell ("Farrell"), a NuVasive sales professional charged with helping LeDuff manage his NuVasive sales territory.  During this time, LeDuff frequently mentioned that Soufleris was recruiting him to join Absolute Medical Systems to represent Alphatec's competitive products.

25.     As a former NuVasive sales professional, Soufleris was well aware of the existence of LeDuff's PIIA and that LeDuff owes NuVasive non-competition and non-solicitation obligations.

---

[1] Soufleris', Absolute Medical Systems', and Absolute Medical's actions are the subject of NuVasive's causes of action in *NuVasive, Inc. v. Absolute Medical, et al.*, United States District Court for the Middle District of Florida, Civil Action No. 6:17-cv-2206-Orl-41GJK and NuVasive's claims in *NuVasive, Inc. v. Absolute Medical*, American Arbitration Association, No. 01-19-0002-0663.

26. LeDuff met with Farrell on August 28, 2019, at LeDuff's home. During this meeting, LeDuff showed Farrell certain Alphatec products that, upon information and belief, were given to him by Soufleris and Absolute Medical Systems. Notably, LeDuff showed Farrell the screws associated with Alphatec's knock-off of NuVasive's innovative RELINE fixation system. He then told Farrell that Alphatec hired the NuVasive engineers who created the RELINE system so that it could create a copycat version of the system.

27. During the August 28, 2019, meeting, LeDuff told Farrell that he intended to resign from NuVasive on October 15, 2019, just after receiving his quarterly bonus. He also presented Farrell with an "offer letter" from Absolute Medical Systems which had a personal note from Soufleris attached to it. Among other things, the offer letter promised to pay Farrell a guaranteed salary of $90,000 and indemnify him against lawsuits brought by NuVasive to enforce his restrictive covenants.

28. Upon information and belief, Absolute Medical Systems and/or Alphatec promised to indemnify LeDuff against lawsuits brought by NuVasive to enforce his restrictive covenants.

29. In addition to recruiting Farrell to Absolute Medical Systems/Alphatec, LeDuff demonstrated Alphatec's products to multiple surgeons within his NuVasive sales territory including, without limitation, one surgeon in Naples, Florida, and one surgeon in Fort Meyers, Florida, all while still employed by NuVasive.

30. Upon information and belief, Soufleris and Absolute Medical Systems, despite knowing LeDuff was employed by NuVasive, encouraged LeDuff to solicit Farrell to

join LeDuff at Absolute Medical Systems and his NuVasive surgeon-customers to utilize Alpahtec's competitive products.

31. On September 18, 2019, NuVasive terminated LeDuff's employment, after which LeDuff visited with some of his former NuVasive surgeon-customers in further violation of his PIIA.

32. On September 20, 2019, LeDuff informed at least one NuVasive employee that he intends to compete with NuVasive within his former NuVasive sales territory and not honor his restrictive covenants.

33. On or about September 20, 2019, upon information and belief, LeDuff, or someone acting in concert with him, provided a hospital within his NuVasive sales territory with pricing for Alphatec's products, and surgeries in which Alphatec's products will be used are being scheduled even though there is no past history of Alphatec products being used in this hospital.

## COUNT I – BREACH OF DUTY OF LOYALTY
**(LeDuff)**

34. NuVasive incorporates the allegations contained in paragraphs 1 through 33.

35. LeDuff owed NuVasive a duty of loyalty throughout his NuVasive employment.

36. LeDuff breached his duty of loyalty by, without limitation, soliciting business from his NuVasive customers on behalf of Absolute Medical Systems/Alphatec, and soliciting Farrell to leave NuVasive and join him at Absolute Medical Systems/Alphatec while still employed by NuVasive.

37. LeDuff's breaches of his duty of loyalty harmed NuVasive and caused it to incur damages.

## COUNT II – BREACH OF CONTRACT
### (LeDuff)

38. NuVasive incorporates the allegations contained in paragraphs 1 through 33.

39. LeDuff's PIIA, including, without limitation, Sections II, VI, and VII, is a valid and enforceable contract between LeDuff and NuVasive. The restrictive covenants within LeDuff's PIIA are reasonably necessary to protect NuVasive legitimate business interests including, without limitation: (1) NuVasive's confidential and proprietary business information; (2) the substantial relationships and goodwill NuVasive possesses with its customers in LeDuff's former sales territory; (3) the specialized training NuVasive provided to LeDuff; and (4) NuVasive's interest in preventing its current employees from being raided and promoting productivity and maintaining a competent and specialized sales team.

40. The geographic and temporal restrictions contained in Section VII are reasonable.

41. NuVasive fully performed all of the obligations imposed on it by the PIIA.

42. LeDuff breached and continues to breach many of the obligations imposed on him by the PIIA by soliciting business from his NuVasive customers on behalf of Absolute Medical Systems/Alphatec, and soliciting Farrell to leave NuVasive and join him at Absolute Medical Systems/Alphatec.

43. Now that LeDuff's tenure at NuVasive is over, it is nearly certain that he will continue to violate his contractual obligations. Indeed, LeDuff informed NuVasive that he does not intend to honor his contractual obligations and will continue to violate them.

44. There is a substantial likelihood that NuVasive will prevail on the merits of this action as LeDuff breached and/or is breaching valid and enforceable contractual obligations.

45. LeDuff's breaching of his PIIA has harmed NuVasive.

46. NuVasive will suffer additional harm if the Court does not require LeDuff to comply with his post-employment contractual obligations to maintain the confidentiality of NuVasive's proprietary information, not solicit NuVasive's employees, and not compete with NuVasive.

47. No legal remedy can fully compensate NuVasive for the harm LeDuff's actions are causing.

48. The balance of equities tips in favor of issuing the requested injunction because it will not harm LeDuff, as LeDuff is contractually obligated to abide by the terms of the PIIA.

49. Issuing the requested injunction will benefit the public's interest as the public has an interest which requires adherence to contracts and fair competition.

**COUNT III – AIDING AND ABETTING BREACH OF DUTY OF LOYALTY**
**(Soufleris and Absolute Medical Systems)**

50. NuVasive incorporates the allegations contained in paragraphs 1 through 37.

51. LeDuff owed NuVasive a duty of loyalty throughout his NuVasive employment.

52. LeDuff breached his duty of loyalty by, without limitation, soliciting business from his NuVasive customers on behalf of Absolute Medical Systems/Alphatec, and

soliciting Farrell to leave NuVasive and join him at Absolute Medical Systems/Alphatec while still employed by NuVasive.

53. Soufleris and Absolute Medical Systems were aware of LeDuff's breaches of his duty of loyalty to NuVasive.

54. Soufleris and Absolute Medical Systems substantially assisted and encouraged LeDuff's wrongdoing by, without limitation: (1) providing him with Alphatec's competitive products to present to Farrell and LeDuff's NuVasive customers; (2) encouraging him to solicit Farrell and his NuVasive customers on Absolute Medical Systems/Alphatec's behalf while still employed by NuVasive; (3) providing him with the Absolute Medical Systems job offer to deliver to Farrell; and (4) permitting him to work on Absolute Medical Systems/Alphatec's behalf until he could resign from NuVasive after receiving his quarterly bonus from NuVasive.

55. Soufleris' and Absolute Medical Systems' aiding and abetting of LeDuff's breaches of his duty of loyalty harmed NuVasive and caused it to incur damages.

### COUNT IV – TORTIOUS INTERFERENCE WITH CONTRACT
**(Soufleris and Absolute Medical Systems)**

56. NuVasive incorporates the allegations contained in paragraphs 1 through 33 and 39 through 46.

57. The PIIA is a valid and enforceable contract between LeDuff and NuVasive.

58. Soufleris and Absolute Medical Systems possessed actual knowledge of the PIIA.

59. Soufleris and Absolute Medical Systems intentionally and without justification procured LeDuff's breach of the PIIA by, without limitation: (1) providing him

with Alphatec's competitive products to present to Farrell and LeDuff's NuVasive customers; (2) encouraging him to solicit Farrell and his NuVasive customers on Absolute Medical Systems/Alphatec's behalf while still employed by NuVasive; (3) providing him with the Absolute Medical Systems job offer to deliver to Farrell; and (4) permitting him to work on Absolute Medical Systems/Alphatec's behalf until he could resign from NuVasive after receiving his quarterly bonus from NuVasive.

60.     Soufleris's and Absolute Medical Systems' tortious interference with the PIIA harmed NuVasive and caused it to incur damages.

## PRAYER FOR RELIEF

WHEREFORE, NuVasive respectfully requests that this Court:

A.      Issue a preliminary and final injunction which requires LeDuff, and those acting in concert with him, to comply with all of the contractual obligations he owes to NuVasive pursuant to the PIIA;

B.      Award NuVasive the reasonable costs, including attorney's fees, it incurs in obtaining the requested equitable relief;

C.      Compel NuVasive's claim for monetary damages against LeDuff to binding arbitration;

D.      Award NuVasive monetary damages against Soufleris and Absolute Medical Systems; and

E.      Grant any other further and general relief it deems just and proper.

Respectfully submitted,

*/s/ R. Craig Mayfield*
R. Craig Mayfield (Fla. Bar No. 0429643)
cmayfield@bradley.com
Diana Evans (Fla. Bar No. 98945)
Dnevans@bradley.com
Bradley Arant Boult Cummings LLP
100 North Tampa Street, Suite 2200
Tampa, Florida 33602
Tel: (813) 559-5500
Fax: (813) 229-5946

Christopher W. Cardwell, Esq. (*pro hac vice* forthcoming)
Mary Taylor Gallagher *(pro hac vice* forthcoming*)*
M. Thomas McFarland, Esq. (*pro hac vice* forthcoming)
GULLETT SANFORD ROBINSON & MARTIN PLLC
150 Third Avenue South, Suite 1700
Nashville, TN 37201
(615) 244-4994 (Telephone)
(615) 256-6339 (Facsimile)
ccardwell@gsrm.com
mtgallagher@gsrm.com
tmcfarland@gsrm.com

*Attorneys for Plaintiff NuVasive, Inc.*