UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

| | |
|---|---|
| NUVASIVE, INC., | ) |
| Plaintiff, | ) ) ) |
| v. | ) Civil Case No. 2:19-cv-698-FtM-38NPM ) |
| CHRISTOPHER LeDUFF, GREGORY SOUFLERIS, and ABSOLUTE MEDICAL SYSTEMS, LLC, | ) INJUNCTIVE RELIEF SOUGHT ) ) ) |
| Defendants. | ) ) |

## NUVASIVE, INC.'S MOTION AND INCORPORATED MEMORANDUM OF LAW FOR PRELIMINARY INJUNCTION AGAINST CHRISTOPHER LEDUFF

Pursuant to Federal Rule of Civil Procedure 65, Plaintiff NuVasive, Inc. ("NuVasive"), respectfully moves this Court to preliminarily enjoin Defendant, Christopher LeDuff ("LeDuff"), and those acting in concert with him, from violating the post-employment obligations he owes to NuVasive.

NuVasive terminated LeDuff's employment after it discovered his scheme to resign from NuVasive and move his business immediately after he collected a quarterly bonus in October 2019. In furtherance of his scheme, LeDuff—while still employed by NuVasive— illegally solicited NuVasive's sales representatives and customers to join him. LeDuff immediately visited several of his NuVasive surgeon-customers after being terminated, and informed his direct supervisor that he intends to ignore the post-employment obligations he owes to NuVasive and compete in his former sales territory.[1]

---

[1] At least some of those surgeon-customers appear to be scheduling surgeries in which competitive products will be used.

This Court should preliminary enjoin LeDuff from further violations of his post-employment obligations because no legal remedy can fully compensate NuVasive for the irreparable injury it is suffering, and each of the necessary factors to support an injunction exist in this matter. Indeed, if not enjoined, LeDuff will continue to convert NuVasive's business and goodwill all in violation of the reasonable post-employment obligations he owes to NuVasive.

## I. INTRODUCTION

LeDuff is a long-time NuVasive sales representative who decided to join Gregory Soufleris' ("Soufleris") competitive distributorship, Absolute Medical Systems, LLC ("Absolute Medical Systems") immediately after receiving a quarterly bonus from NuVasive in October 2019. There is nothing inherently wrong in LeDuff's decision to change employers. However, the manner in which he did so violated his common law duty of loyalty and his contractual obligations to NuVasive as, while still employed by NuVasive and waiting to receive his quarterly bonus, LeDuff:

- solicited the individual NuVasive employed to assist him in managing his sales territory to quit NuVasive and join him at Absolute Medical Systems; and

- obtained pledges from some of his surgeon-customers to utilize products designed and manufactured by NuVasive's direct competitor, Alphatec Spine, Inc. ("Alphatec"), once he joined Absolute Medical Systems.

Unfortunately for LeDuff, the NuVasive employee he solicited to join him, Joseph Farrell ("Farrell") informed NuVasive of LeDuff's scheme shortly after LeDuff presented him with a written employment offer from Absolute Medical Systems. However, it appears that LeDuff successfully converted some of NuVasive's business to Alphatec and it is nearly certain that he will convert more if not enjoined.

This case's facts support the imposition of a preliminary injunction. There is a substantial likelihood that NuVasive will succeed in this case because LeDuff's restrictive covenants (which he has violated and continues to violate) are reasonably necessary to protect NuVasive's legitimate business interests, including, without limitation, the protection of its confidential and proprietary business information, the substantial relationships and goodwill NuVasive possesses with its customers within LeDuff's former sales territory, the extraordinary and specialized training NuVasive provided to LeDuff, and the prevention of "raiding" of NuVasive's remaining employees, such as Farrell. And, as LeDuff has no legitimate reason for failing to comply with his restrictive covenants, enforcing them will not cause him to incur harm, including, without limitation, being precluded from gainful employment. Finally, enforcement of the restrictive covenants that LeDuff owes to NuVasive will benefit the public's interest in adherence to contract and fair competition.

## II.   STATEMENT OF RELEVANT FACTS

### A. **LeDuff's restrictive covenants are enforceable.**

The relationship between LeDuff—who worked as a NuVasive sales professional between January 2009 and September 18, 2019—and NuVasive is governed by the Proprietary Information, Inventions Assignment and Restrictive Covenants Agreement (the "PIIA") that LeDuff signed on July 3, 2013.[2] (Doc. 1 at ¶ 6; Decl. M. Singer, attached as **Exhibit 1** at ¶ 3). Particularly relevant to this lawsuit are the Non-solicitation of Shareowners and Non-competition provisions, found at Sections VI and VII, respectively. (Doc. 1-1 at §§ VI, VII).

---

[2] Prior to becoming a direct employee of NuVasive, LeDuff worked for an independent distributor of NuVasive's products. (Ex. 1 at ¶ 3; Doc. 1 at ¶ 14). LeDuff transitioned to a direct employee of NuVasive on or about February 14, 2013, and signed his PIIA on July 3, 2013, as a condition of that employment. (Doc. 1 at ¶¶ 6, 14; Ex. 1 at ¶ 3).

In sum, the Non-solicitation of Shareowners provision precludes LeDuff from soliciting NuVasive's employees, agents, representatives, etc. to join a competitive business during his NuVasive engagement and for one year after that engagement terminates. (*Id.* at § VI). And the Non-competition provision precludes LeDuff from servicing the surgeons, hospitals, and other customers within his sales territory on behalf of a competitive company during the same period of time. (*Id.* at § VII). Pursuant to Section XVII of the PIIA, the temporal component of these obligations is tolled during any period that LeDuff is not in compliance with them. (*Id.* at § XVII).

Phillip Poisson ("Poisson"), Director, Sales, South Florida, and Mark Singer ("Singer"), Vice-President and General Manager, Southeast, testified in their declarations that these restrictions are necessary to protect, without limitation, NuVasive's proprietary information, customer relationships, goodwill, employee relationships, and the training it provides to its employees. (Doc. 1 at ¶¶ 13, 15; Ex. 1 at ¶¶ 3, 5; Decl. P. Poisson, attached as **Exhibit 2** at ¶ 3). For example, Poisson and Singer agree that "NuVasive invests substantial funds into providing [its] sales force with extraordinary, specialized, comprehensive, and industry leading training," that "NuVasive invests significant time, money, and resources into its sales personnel so that they are able to favorably represent the company and create goodwill with potential and existing NuVasive customers," and that LeDuff "received NuVasive's extraordinary, industry-leading training, had access to and knowledge of NuVasive's trade secrets on other proprietary information, and is the face of NuVasive to customers within his sales territory." (Doc. 1 at ¶¶ 11–13, 15; Ex. 1 at ¶ 3; Ex. 2 at ¶ 3).

**B. LeDuff violated his duty of loyalty and restrictive covenants by soliciting his surgeon customers and Farrell to shift their purchasing decisions and employment to Absolute Medical Systems/Alphatec.**

In early 2019, LeDuff informed Farrell of his intent to leave NuVasive and join Alphatec. (Decl. J. Farrell, attached as **Exhibit 3** at ¶ 4). Then, in an August 28, 2019 meeting at LeDuff's house, LeDuff:

- showed some of Alphatec's products (at least one of which he described as a knock-off of a NuVasive product) to Farrell;

- presented Farrell with an offer of employment from Absolute Medical Systems, which distributes Alphatec's (and other competitive) products;

- claimed that at least one of LeDuff's surgeon customers pledged to try Alphatec's products after he resigned from NuVasive; and

- discussed his plan to remain at NuVasive long enough to receive a quarterly bonus on October 15, 2019.

(*Id.* at ¶¶ 9–13). Farrell informed Poisson of this meeting shortly after it transpired.

Poisson scheduled a September 18, 2019 meeting with LeDuff after learning that he was promoting Alphatec's products to some of his surgeon customers and Farrell. (Ex. 2 at ¶ 4). LeDuff did not appear at the meeting so Poisson terminated his employment. (*Id.* at ¶ 5). A few days later, LeDuff made various statements to Poisson which indicate that he is not going to honor his non-compete obligations. (*Id.* at ¶ 6). LeDuff's LinkedIn page corroborates his stated intent to continue violating his non-competition obligations as it indicates he is now a "Managing Director" with Alphatec responsible for the territory of Southwest Florida, which encompasses his former NuVasive sales territory. (LinkedIn page of C. LeDuff, attached as **Exhibit 4**).

5

### III.    PRELIMINARY INJUNCTION STANDARD

District courts sitting in diversity look to federal law when determining whether to grant or deny a preliminary injunction. *Ferrero v. Assoc. Materials, Inc.*, 923 F.2d 1441, 1448 (11th Cir. 1991).  This requires a movant to demonstrate:

- a substantial likelihood of success on the merits;
- that it will suffer irreparable injury unless the injunction issues;
- that the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and
- that the injunction would not be adverse to the public interest.

*Lucky Cousins Trucking, Inc. v. QC Energy Res. Tex., LLC*, 223 F. Supp. 3d 1221, 1224 (M.D. Fla. 2016); *Forsyth Cnty. v. U.S. Corps of Eng'rs.*, 633 F.3d 1032, 1039 (11th Cir. 2011).

### IV.    ARGUMENT

All four of these elements are clearly satisfied in this case.  There is a substantial likelihood that NuVasive will succeed on the merits of this action because the relevant restrictive covenants are valid and enforceable, and LeDuff is violating them.  These violations are irreparably harming NuVasive by, without limitation, robbing it of the goodwill LeDuff created on its behalf with his surgeon customers.  On the other hand, LeDuff will not be harmed if the requested injunction issues because he will simply be enjoined from doing what he already cannot do.  And finally, issuing the injunction will benefit the public's interest in having valid contracts enforced as written.

#### A. **There is a substantial likelihood that NuVasive will succeed on the merits.**

First, there is a substantial likelihood that NuVasive will succeed on the merits of its breach of contract claim against LeDuff.  This element is the "first and primary factor" for a

court to determine whether a preliminary injunction should issue, and requires NuVasive to "make a showing of likely or probable, but not certain, success at trial." *Sandy's Café, LLC v. Santiago*, No. 18-10007-CIV-MOORE/SIMONTON, 2018 WL3413042, at *20 (S.D. Fla. Jun. 5, 2018). In the case at bar, which is governed by Florida substantive law, this requires showing that NuVasive will likely succeed at proving:

- the existence of one or more legitimate business interests justifying the restrictive covenant; and

- that the contractually specified restraint is reasonably necessary to protect those interests;

*N. Am. Prods. Corp. v. Moore*, 196 F. Supp. 2d 1217, 1228 (M.D. Fla. 2002) (quoting Fla. Stat. § 542.335(1)(b)–(c)).[3]

### 1. NuVasive's legitimate business interests justify LeDuff's PIIA.

Several legitimate business interests exist to justify the restrictive covenants within LeDuff's PIIA, namely:

- the protection of NuVasive's confidential and proprietary business information;

- NuVasive's substantial relationships with its customers within LeDuff's former sales territory along with the goodwill arising from those relationships;

- the extraordinary and specialized training NuVasive provided to LeDuff during his relationship with NuVasive; and

- the prevention of raiding of current NuVasive employees.

---

[3] The elements of any breach of contract claim under Florida law include: (1) a valid contract; (2) a material breach; and (3) damages. *United Subcontractors, Inc. v. Godwin*, No. 11-81329-CIV-HURLEY/HOPKINS, 2012 WL 1593173, at *2 (S.D. Fla. Feb. 3, 2012) (citing *Abbott Labs., Inc. v. Gen. Elec. Capital*, 765 So. 2d 737, 740 (Fla. 5th DCA 2000). With regard to second and third elements, "[w]orking for a competitor constitutes material breach of a non-competition agreement" and "[b]ecause determining damages of an employee's breach of a non-competition agreement is inherently difficult, an injunction is a normal remedy in such cases." *Id.* at *11.

Fla. Stat. § 542.335(b); *Partylite Gifts, Inc. v. MacMillan*, 895 F. Supp. 2d 1213, 1225 n.13 (M.D. Fla. 2012) ("[F]lorida courts recognize that an employer's relationship with its employees constitutes a legitimate business interest.") (citing *Balasco v. Gulf Auto Holding, Inc.*, 707 So. 2d 858, 860 (Fla. 2d DCA 1998). Furthermore, "[t]he right to prohibit the direct solicitation of existing customers is a legitimate business interest, and a covenant not to compete which includes a non-solicitation clause is breached when a former employee directly solicits customers of his former employer." *Atomic Tattoos, LLC v. Morgan*, 45 So. 3d 63, 65 (Fla. 2d DCA 2010)

The existence of NuVasive's legitimate business interests is clearly established via the testimony of Farrell, Singer, and Poisson. Indeed, Singer and Poisson verified certain allegations in NuVasive's Complaint which establish that:

- NuVasive invests substantial funds providing its sales force with extraordinary, specialized, comprehensive, and industry-leading training;

- the training NuVasive provides to its sales force supplies it with a deep understanding of NuVasive's products, methodology, trade secrets, and other valuable confidential and proprietary information;

- NuVasive also invests significant time, money, and other resources for its sales personnel to develop goodwill and substantial relationships with NuVasive's customers on its behalf;

- the goodwill NuVasive's sales personnel develop belongs to NuVasive; and

- like all of NuVasive's other sales personnel, LeDuff received the above-described training and access to NuVasive's confidential and proprietary information.[4]

---

[4] This is of particular import as LeDuff's LinkedIn establishes that prior to working for NuVasive, LeDuff had no experience whatsoever in the spinal products industry. (Ex. 4). Accordingly, all of the knowledge and training LeDuff gained regarding representing and selling spinal products he gained through NuVasive. *See Hapney v. Cent. Garage*, 579 So. 2d 127, 132 (Fla. 2d DCA 1991) ("The rationale is that if an employer dedicates time and money to the extraordinary training and education of an employee, whereby the employee attains a unique skill or an enhanced degree of sophistication in an existing skill, then it is unfair to permit that employee to use those skills to the benefit of a competitor when the employee has contracted not to do so."), *rev'd on other*

(Doc. 1 at ¶¶ 11–13, 15; Ex. 1 at ¶ 3; Ex. 2 at ¶ 3).  Singer's testimony provides additional detail as to the types of confidential and proprietary information LeDuff received throughout his engagement with NuVasive including, without limitation, NuVasive's:

- pricing information;
- knowledge of NuVasive's customer preferences;
- information regarding existing and pipeline products;
- sales techniques;
- product research; and
- sales forecasts.

(Ex. 1 at ¶ 5).  Likewise, Farrell—who worked closely with LeDuff—testified that LeDuff received the same training and access to NuVasive's trade secrets and confidential information that he received, and, therefore, NuVasive's legitimate business interest in "maintaining a competent and specialized sales team" should be protected from LeDuff's improper raiding. (*Id.* at ¶¶ 5, 9–13); *Balasco*, 707 So. 2d at 860.

**2.  The restrictive covenants in LeDuff's PIIA are reasonably necessary to protect NuVasive's legitimate business interests.**

In order for the restrictive covenants within LeDuff's PIIA to be enforceable, they "must be reasonable with regard to time, area and line of business."  *Proudfoot Consulting Co. v. Gordon*, 576 F.3d 1223, 1231 (11th Cir. 2009) (citing Fla. Stat. § 542.335(1)).  The temporal

---

*grounds*, *Gupton v. Vill. Key & Saw Shop*, 656 So. 2d 475 (Fla. 1995). Put simply, the knowledge and training NuVasive provided to LeDuff during his decade with the company cannot "be acquired by following the directions in the box or learned by a person of ordinary education by reading a manual," and justifies the reasonable restrictions in LeDuff's PIIA.  *Id.*

limitation of LeDuff's restrictive covenants is reasonable as they extend for only one year after the termination of his relationship with NuVasive. *Smart Pharm., Inc. v. Viccari*, 213 So. 3d 986 (Fla. 1st DCA 2016) (two-year restriction reasonable); *Southernmost Foot & Ankle Specialists, P.A. v. Torregrosa*, 891 So. 2d 591 594–95 (Fla. 3d DCA 2004) (same). Likewise, the "area" in which LeDuff is prohibited from competing with NuVasive is reasonable because it encompasses only those customers for whom he was assigned responsibility, participated in sales and/or marketing efforts towards, or serviced on NuVasive's behalf during the twelve months preceding his termination. *N. Am. Prods. Corp.*, 196 F. Supp. 2d at 1232–33 (enjoining a former salesperson from soliciting those customers with whom he made sales contact within the year preceding his termination). Finally, LeDuff's PIIA is reasonable as to NuVasive's line of business because it is expressly limited to providing services on behalf of a Conflicting Organization, such as Alphatec.[5] *Milner Voice & Data, Inc. v. Tassy*, 377 F. Supp. 2d 1209, 1217 (S.D. Fla. 2005) ("Finally, the non-competition clause is limited to restricting activity that is competitive with the activities the Defendants conducted for [Plaintiff].") (internal quotations omitted).

---

[5] A "Conflicting Organization," which is defined in LeDuff's PIIA, is any person or organization that develops, produces, markets, sells, etc. any product, process, machine, invention, or services which resembles, competes with, or replaces any NuVasive product, process, machine, invention, or services: (i) that LeDuff worked on or became knowledgeable about through his NuVasive relationship; and (ii) whose use or marketability could be enhanced by application of NuVasive's proprietary information to which LeDuff had access during his NuVasive relationship. (Doc. 1-1 at § VII). Farrell testified that Alphatec's products directly compete with the NuVasive products he and LeDuff became knowledgeable about and represented. (Ex. 3 at ¶ 7). He testified further that the training and proprietary information he and LeDuff received from NuVasive would drastically increase the marketability of Alphatec's competitive products. (*Id.* at ¶ 8). As such, there can be no doubt that Alphatec is a "Conflicting Organization." (Ex. 1 at ¶ 6; Ex. 3 at ¶¶ 7–8).

B. **NuVasive is suffering irreparable injury that it will continue to suffer unless the injunction issues.**

Absent an injunction, NuVasive will continue to suffer irreparable harm resulting from LeDuff's violations of his PIIA. "The violation of an enforceable restrictive covenant creates a presumption of irreparable injury to the person seeking enforcement of a restrictive covenant." *E.g.*, *Proudfoot Consulting*, 576 F.3d at 1231 (citing Fla. Stat. § 542.335(1)(j)). Here, LeDuff violated his PIIA by soliciting Farrell to join him at Absolute Medical Systems/Alphatec and his NuVasive customers to utilize Alphatec's competitive products all while still employed by NuVasive. (Ex. 4 at ¶¶ 9–13). Furthermore, after being terminated, LeDuff met with several of his now-former NuVasive customers and then indicated that he intends to continue breaching the non-competition obligations within his PIIA. (Doc. 1, ¶¶ 31–32; Ex. At ¶ 3; Ex. 2 at ¶¶ 3, 6). Accordingly, NuVasive is entitled to the presumption under Florida law that it is suffering irreparable injury.

C. **The irreparable harm NuVasive is incurring vastly outweighs any harm to LeDuff, which is minimal.**

The irreparable harm NuVasive will continue to incur absent an injunction outweighs any harm to LeDuff. LeDuff is not prohibited entirely from working for Absolute Medical Systems or Alphatec. Nor is he prohibited from working within a vast geographical territory. To the contrary, the PIIA's restrictive non-competition clause prohibits LeDuff only from servicing the surgeons, hospitals, and other customers within his former NuVasive sales territory. (Doc. 1-1 at § VII). As in *North American Products Corporation*, LeDuff "is not prohibited . . . from operating a competing business or from soliciting customers in the market so long as they are not [] customers with whom [he] did business prior to his departure" from

11

NuVasive. 196 F. Supp. 2d at 1231 (holding the balance of harms weighed in favor of the former employer seeking enforcement of a restrictive covenant). In fact, Florida courts have held that enforcement of more onerous restrictive covenants weigh in favor of the party seeking enforcement. *See Pitney Bowes, Inc. v. Acevedo*, No. 08-21808-CIV-JORDAN, 2008 WL 2940667, at *5 (S.D. Fla. Jul. 28, 2008). This Court should not reach a contrary result in this case, and the requested injunction should issue.

### D. Issuing the injunction will benefit the public interest.

Enjoining LeDuff will further Florida's public interest in adherence to valid contracts and fair competition. *E.g.*, *Estetique Inc. USA v. Xpamed LLC*, No. 0:11-CIV-61740-COHN/SELTZER, 2011 WL 4102340, at *11 (S.D. Fla. Sept. 15, 2011). Indeed:

> Under Florida law, the public has an interest in the enforcement of restrictive covenants. This view is codified in the 1996 amendment to the statute. The Florida statute sharply limits the use of the "contrary to public policy" defense to enforcement of a restrictive covenant. A court may not refuse enforcement on grounds of public policy unless the court articulates the public policy with specificity and finds that the specified public policy requirements substantially outweigh the need to protect the interest established by the proponent of the restriction.

*N. Am. Prods. Corp.*, 196 F. Supp. 2d at 1231–32 (citing Fla. Stat. § 542.335(1)(i)). Just as in that case, entering an injunction enforcing LeDuff's PIIA "will advance the public interest and do nothing adverse to the public interest." *Id.* at 1232. Accordingly, this factor is satisfied and the injunction should issue.

### V. RELIEF REQUESTED

As established above, NuVasive is entitled to a preliminary injunction enjoining LeDuff from further violating the obligations imposed upon him by the PIIA because each

factor exists in this case.  As such, NuVasive respectfully requests that the Court order LeDuff to abide by those obligations, including, without limitation.

1. maintaining the confidentiality of NuVasive's proprietary information that was entrusted to him during his employment;

2. returning all documents, papers or other materials in his possession or under his control which may contain or be derived from NuVasive's proprietary information;

3. not competing with NuVasive for his customers for one year following the entry of this preliminary injunction; and

4. not soliciting any NuVasive employees,  agents, representatives, etc. for one year following the entry of the preliminary injunction.

Dated: September 26, 2019

Respectfully submitted,

*s/ R. Craig Mayfield*
R. Craig Mayfield (Fla. Bar No. 0429643)
cmayfield@bradley.com
Diana Evans (Fla. Bar No. 98945)
Dnevans@bradley.com
Bradley Arant Boult Cummings LLP
100 North Tampa Street, Suite 2200
Tampa, Florida 33602
Tel: (813) 559-5500
Fax: (813) 229-5946

Christopher W. Cardwell, Esq. (*pro hac vice* forthcoming)
Mary Taylor Gallagher *(pro hac vice* forthcoming*)*
M. Thomas McFarland, Esq. (*pro hac vice* forthcoming)
GULLETT SANFORD ROBINSON & MARTIN PLLC
150 Third Avenue South, Suite 1700
Nashville, TN 37201
Tel: (615) 244-4994
Fax: (615) 256-6339
ccardwell@gsrm.com
mtgallagher@gsrm.com
tmcfarland@gsrm.com

*Attorneys for Plaintiff NuVasive, Inc.*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 26th day of September, 2019, I electronically filed the foregoing with the Clerk of the Court via the CM/ECF system, which will send notice of electronic filing to the registered participants as identified on the NEF. I further certify that the individuals were served via the methods indicated below:

*Via hand delivery and U.S. Mail, postage prepaid*:

Christopher LeDuff
8773 Largo Mar Drive
Estero, Florida 33967

*Defendant*

*With courtesy copy via Email and U.S. Mail, postage prepaid*:

Bryan Busch
Busch, Slipakoff, Mills & Slomka, LLC
2859 Paces Ferry Road SE, Ste. 1700
Atlanta, Georgia 30339
bb@bsms.law

*Via U.S. Mail, postage prepaid*:

Absolute Medical Systems, LLC
c/o Gregory Soufleris, Registered Agent
8901 Lee Vista Boulevard, #3003
Orlando, Florida 32829

*Defendant*

Gregory Soufleris
10525 Cromwell Grove Terrace
Orlando, Florida 32827

*Defendant*

*s/R. Craig Mayfield*
Attorney for NuVasive, Inc.