UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

NUVASIVE, INC.,

      Plaintiff,

v.                                          Case No.: 2:19-cv-698-FtM-38NPM

CHRISTOPHER LEDUFF, GREGORY
SOUFLERIS and ABSOLUTE
MEDICAL SYSTEMS, LLC,

      Defendants.
_____/

## OPINION AND ORDER[1]

Before the Court is Plaintiff NuVasive, Inc.'s Motion for Preliminary Injunction Against Defendant Christopher LeDuff (Doc. 7), LeDuff's opposition (Doc. 21), and NuVasive's reply (Doc. 28). On October 28, 2019, the Court held oral argument on NuVasive's motion and reserved ruling. (Doc. 35). For the below reasons, the Court denies the preliminary injunction.[2]

---

[1] Disclaimer: Documents filed in CM/ECF may contain hyperlinks to other documents or websites. These hyperlinks are provided only for users' convenience. Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees. By allowing hyperlinks to other websites, this Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their websites. Likewise, the Court has no agreements with any of these third parties or their websites. The Court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink stops working or directs the user to some other site does not affect the opinion of the Court.

[2] At the hearing, the Court preliminarily noted it was inclined to grant the motion after recognizing the parties' seemingly common ground on some doctors and asked them to confer on the potential parameters of a preliminary injunction. But the parties could not agree on a dozen and a half physicians and hospitals. The Court thus ended the hearing by reserving ruling on the motion. Since then, the Court has reviewed the record and applicable case law. And, although the arguments by NuVasive's attorneys makes a case for a preliminary injunction, the evidence it submitted does not. In the end, NuVasive has

## INTRODUCTION

This is an unfair competition case—one of many between NuVasive and Defendant Absolute Medical Systems, LLC. NuVasive and Absolute Medical compete in the medical device industry. The companies (or their successors) used to do business together but leadership changes have now resulted in them being competitors. The change of allegiances has trickled down to the employees. Absolute Medical and its counterpart, Alphatec, Inc., are allegedly recruiting NuVasive's sales representatives to work for them. LeDuff is one such employee. To prevent further pilfering of its workforce and customer base, NuVasive is trying to enforce non-solicitation and non-compete restrictive covenants its sales agents signed when they started working at NuVasive. Against this backdrop, the Court turns to this case's facts.

## BACKGROUND

The Court makes these factual findings based on the admitted allegations and evidence submitted with the parties' briefing:[3]

NuVasive is a medical device company that manufactures products for spine disorders. It markets and sells its products through sales agents like LeDuff. For the past six years, LeDuff sold NuVasive products in Fort Myers and Naples. Sales agents like LeDuff are privy to the company's confidential and proprietary information such as prices,

---

not carried its burden of persuasion for the requested preliminary injunction. Of course, the parties may enter their own independent agreement on the restrictive covenants.

[3] Middle District of Florida Local Rule 4.06 limits all hearings on motions for preliminary injunction to "argument of counsel unless the Court grants express leave to the contrary in advance of the hearing pursuant to Rule 43(e), Fed. R. Civ. P." Neither party requested an evidentiary hearing.

customer preferences, products details, product research sales techniques, and sales forecasts. (Doc. 7-1 at 5). NuVasive also trains its sales staff on products, methodology, trade secrets and other proprietary information.

About seven weeks ago, NuVasive fired LeDuff upon learning he planned to work for its direct competitor, Alphatec, Inc., and was soliciting NuVasive customers and an employee to join him. (Doc. 7-1 at 5; Doc. 7-2 at 1-2; Doc. 7-2 at 2). LeDuff also allegedly told his boss, Phillip Poisson, that he would compete against the company while working for Alphatec. (Doc. 7-2 at 2, ¶ 6).

According to NuVasive, LeDuff has made good on that promise. Since LeDuff's firing, four of his former NuVasive surgeon-customers have used or are scheduling to use Alphatec products for the first time. (Doc. 7-1 at 1-2; Doc. 28-1 at 1). Those surgeons are Dr. Paul Richard, Dr. Mark Graham, Dr. Constatine Plakas, and Dr. Dean Lin. Hospitals in Fort Myers and Naples are also in LeDuff's crosshairs. NuVasive says so because a Lee Health System representative mistakenly emailed NuVasive about pricing information for Alphatec's products two days after LeDuff's firing. (Doc. 7-2 at 2, ¶ 7).

Because of LeDuff's actions, NuVasive sues him for breach of duty of loyalty and breach of contract.[4] (Doc. 1). Both claims are based on LeDuff stealing or trying to steal NuVasive's customers and employees for Alphatec. (Doc. 1 at 8-9, ¶¶ 36, 42). NuVasive argues that LeDuff's actions have violated the non-solicitation and non-compete restrictive covenants in the Proprietary Information, Inventions Assignment and Restrictive Covenant ("PIIA") LeDuff signed when he worked at NuVasive. (Doc. 1-1).

---

[4] NuVasive also sues Gregory Soufleris and Absolute Medical Systems, LLC for aiding and abetting LeDuff's breach of duty of loyalty and tortious interference. (Doc. 1). Those Defendants are not at issue in NuVasive's motion for preliminary injunction.

NuVasive thus moves to enjoin LeDuff from further violating the PIIA while they litigate this case.

Two PIIA provisions are at issue. Under the non-solicitation provision, LeDuff agreed not to poach NuVasive's employees, agents, and independent contractors for one year after leaving NuVasive's employ:

> I agree that during the term of my engagement and for one (1) year thereafter, I will not induce or influence, or seek to induce of influence, any person who is employed or engaged by the Company (as an agent, employee, independent contractor, or in any other capacity) . . . with the purpose of obtaining such person as an employee or independent contractor for a business competitive with the Company, or causing such person to terminate his or her employment, agency or relationship with the Company[.]

(Doc. 1-1 at 7, § VI). Under the non-compete provision, LeDuff agreed not to work for a competitor or start a competing business for the same period:

> I agree that during the course of my engagement and for a period of one (1) year immediately following the termination of my relationship with the Company . . . I will not, without the prior written consent of the Company, (i) serve as a . . . employee . . . or (iii) . . . work or consult for or otherwise affiliate myself with, any Conflicting Organization. A Conflicting Organization is any . . . organization that is engaged in . . . research on, consulting regarding, or development, production, marketing or selling of any product, process, invention or service, which resembles, competes with, or replaces a product, process, machine, invention or service upon which I shall have worked or about which I became knowledgeable as a result of my relationship with Company, who whose use or marketability could be enhanced by the application of Proprietary Information to which I shall have had access during such relationship.

(Doc. 1-1 at 7-8, § VII).

The Complaint and Answer identified LeDuff's job title as sales representative. It was not until the hearing that NuVasive identified LeDuff's position as a sales

4

representative qualified him as a "Spinal Specialist" under the PIIA. LeDuff did not rebuff that characterization. Because NuVasive considered LeDuff to be a "Spinal Specialist," the PIIA limited the non-compete provision to NuVasive's customers:

> I agree that the above-described restrictions in this Section VII shall be limited only to the Customers, for which I, or any shareholder, distributor or employee or independent contractor of any distributor under my direct or indirect supervision, was assigned responsibility for by the Company, participated in sales calls and/or marketing efforts on behalf of the Company, and/or covered medical procedures on behalf of Company, during the last twelve months of my employment with Company.

(Doc. 1-1 at 8, § VII). Although unartfully drafted, the non-compete provision suggests LeDuff could work for a Conflicting Organization but would be prohibited from soliciting any prior "Customers" he contacted or oversaw. The PIIA defines "Customer" to include hospitals, surgery centers, physicians, physicians' employees, insurance companies, and third-party billers who use, order or approve the use or ordering of NuVasive's products or services. (Doc. 1-1 at 8, § VII).[5] Finally, if LeDuff violates the non-solicitation or non-compete provisions, the PIIA extends the one-year period by the time he was not compliant. (Doc. 1-1 at 11, § XVII).

NuVasive now moves to enjoin LeDuff from further violating the PIIA. It does not want LeDuff to use its proprietary information on products, business strategies, pricing, and clients while working for Alphatec. Nor does it want LeDuff to lure or attempt to lure

---

[5] The full definition of "Customer" means "hospitals (including but not limited to surgery centers and other healthcare institutions and their employees), payers (including but not limited to) and (or other health care practitioners including but not limited to the employees of any surgeon or other healthcare practitioners) who use, order or approve the use or ordering of Company products or services." (Doc. 1-1 at 8, § VII).

5

anymore of its customers in Fort Myers and Naples. Thus, NuVasive asks the Court to direct LeDuff to:

- not compete with NuVasive for his customers for one year following the entry of this preliminary injunction;

- not solicit any NuVasive employees, agents, representatives for one year following the entry of the preliminary injunction;

- maintain the confidentiality of NuVasive's proprietary information entrusted to him during his employment; and

- return all documents, papers or other materials in his possession or under this control which may contain or stem from NuVasive's proprietary information.

(Doc. 7). LeDuff opposes the preliminary injunction, arguing the PIIA is overbroad and unenforceable. He also declares that he has neither encouraged any NuVasive customers to use Alphatec products, nor disclosed any NuVasive confidential information or trade secrets while working for Alphatec. (Doc. 21-1 at 1).

**LEGAL STANDARDS**

Federal Rule of Civil Procedure 65(a) governs the entry of preliminary injunctions. A preliminary injunction maintains the status quo until a trial on the merits. *Bloedorn v. Grube*, 631 F.3d 1218, 1229 (11th Cir. 2011). A preliminary injunction is an extraordinary and drastic remedy that courts should grant sparingly. *Seigel v. LePore*, 234 F.3d 1163, 1180 (11th Cir. 2000) (quotations omitted); *see also Frio Ice, S.A. v. Sunfruit, Inc.*, 918 F.2d 154, 159 (11th Cir. 1990) ("The issuance of a preliminary injunction falls within the sound discretion of the district court.").

The party seeking a preliminary injunction must show (1) a substantial likelihood of success on the merits; (2) irreparable injury without the injunction; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the

opposing party; and (4) if issued, the injunction would not be adverse to the public interest. *Bloedorn*, 631 F.3d at 1231 (citation omitted). Because preliminary injunctions are an extraordinary remedy, this relief is appropriate only if the movant clearly establishes the burden of persuasion on each element. *Seigel*, 234 F.3d at 1180.

"To carry this burden, a plaintiff seeking a preliminary injunction must offer proof beyond unverified allegations in the pleadings. Moreover, vague or conclusory affidavits are insufficient to satisfy the plaintiff's burden." *Palmer v. Braun*, 155 F. Supp. 2d 1327, 1331 (M.D. Fla. 2001) *aff'd,* 287 F.3d 1325 (11th Cir. 2002) (internal citations omitted). Put simply, the moving party cannot rely on its pleadings but must support a motion for preliminary injunction with evidence. The Court's Local Rules also require as much: a party seeking a preliminary injunction must support the motion with "allegations of specific facts shown in a verified complaint of accompany affidavits." M.D. Fla. R. 4.05(b)(2), 4.06(a)(1).

## DISCUSSION

The Complaint contains two claims against LeDuff: breach of duty of loyalty and breach of contract. In its motion, however, NuVasive does not distinguish between those two claims and relies on breach of contract principles to argue that LeDuff violated the PIIA's restrictive covenants. (Doc. 7 at 6). The Court will do the same in analyzing the preliminary injunction factors.

NuVasive must first show a substantial likelihood that LeDuff breached the PIIA's restrictive covenants. A federal court sitting in diversity jurisdiction, as here, applies the substantive law of the forum state unless federal constitutional or statutory law compels

a contrary result.  *Tech. Coating Applicators, Inc. v. U.S. Fid. & Guar. Co.,* 157 F.3d 843, 844 (11th Cir. 1998).  The parties do not dispute that Florida law applies.

Florida Statute § 542.335 governs restrictive covenants in employment contracts.  It says that restrictive covenants are enforceable if the restrictions are reasonably limited in "time, area, and line of business."  Fla. Stat. § 542.335(1).  The party seeking to enforce a restrictive covenant—here NuVasive—must "plead and prove" (1) the existence of one or more legitimate business interests justifying the restrictive covenant; and (2) "the contractually specified restraint is reasonably necessary to protect" those interests.  *Id.* § 542.335(1)(b)-(c).  Legitimate business interests include valuable confidential business information, substantial relationships with specific prospective or existing customers, client goodwill associated with an ongoing business, and specialized training.  *Id.* § 542.335(1)(b).  If the party seeking to enforce the covenant meets its burden, then the opposing party must show the restraint is "overbroad, overlong, or otherwise not reasonably necessary to protect the established legitimate business interests."  *Id.* § 542.335(1)(c).  If a restraint is overbroad, overlong, or not reasonably necessary to protect the legitimate interests, the court must "modify the restraint and grant only the relief reasonably necessary to protect such interest or interests."  *Id.*; *see also Proudfoot Consulting Co. v. Gordon*, 576 F.3d 1223, 1231 (11th Cir. 2009)

Here, NuVasive does not provide evidence on why the non-compete and non-solicitation restraints are reasonably necessary to protect its legitimate business interests.  NuVasive has alleged several legitimate business interests:  protecting confidential business information; substantial relationships and goodwill with customers in LeDuff's former sales territory; and specialized training given to sales agents.  (Doc. 7 at 7).  But

8

NuVasive stops there. It neither pleads nor proves why it needs the non-compete and non-solicitation to protect those interests. In arguing the PIIA's restrictive covenants are reasonably necessary, NuVasive focuses entirely on the restrictions' time, area, and scope. (Doc. 7 at 9). But the "time, area, and line of business" principle only goes to a restrictive covenant's general enforceability. It does not explain the reasonableness of the restrictions to protect NuVasive's business interests. Put another way, NuVasive argues the non-compete is enforceable because it lasts for one year, is limited geographically to Naples and Fort Myers, and pertains only to "Conflicting Organizations" like Alphatec. But these criteria do not show why NuVasive needs the non-compete to protect its business interests in the first place.

The three declarations NuVasive filed to support injunctive relief do not fill this void. (Doc. 7-1; Doc. 7-2; Doc. 7-3). Two declarations are from LeDuff's former NuVasive bosses: Mark Singer and Phillip Poisson. They verify the Complaint's allegation that reads, "to protect its legitimate business interests, NuVasive required LeDuff to agree to certain reasonable confidentiality, non-competition, and non-solicitation obligations as a condition of NuVasive allowing him to sell its products." (Doc. 1 at 4, ¶ 15; Doc. 7-1 at 1, ¶ 3; Doc. 7-2 at 1, ¶ 3). But this is a conclusory statement that has no supporting explanation.

The third declaration from LeDuff's former worker, Joseph Farrell, is equally deficient. Farrell, a NuVasive spine specialist, declared "[t]he specialized training and access to confidential and proprietary information that NuVasive provided to LeDuff will drastically increase his ability to market and distribute Alphatec products on behalf of [Alphatec]." (Doc. 7-3 at 2, ¶ 8). This is an empty statement. It does not identify the

confidential and proprietary information that will give LeDuff the advantage. And even if the Court assumed the information that Farrell references is pricing, customer preferences, sales techniques, product research, and sales forecasts, it does not explain how that information improves the marketability of Alphatec's (unidentified) products. *See NuVasive v. Day*, No. 19-cv-10800, 2019 WL 2287709, at *5 (D. Mass. May 29, 2019) (denying NuVasive's motion for a preliminary injunction to enforce a similar non-compete against a former employee who also works at Alphatec); *see also NuVasive, Inc. v. Absolute Medical, LLC*, No. 6:17-cv-2206-Orl-41GJK, 2019 WL 1468522, at *3-4 (M.D. Fla. Feb. 11, 2019) (denying in part NuVasive's motion for a preliminary injunction because it failed to present sufficient evidence). NuVasive cannot simply claim the non-compete and non-solicitation clauses are reasonably necessary to protect its business interest—it must also prove that connection. Having failed in this task, NuVasive has not shown a likelihood of success on the merits to warrant a preliminary injunction. The Court thus denies the motion for preliminary injunction.

Although the Court need not consider the other requirements for injunctive relief because NuVasive fails at the first step, the Court notes it did not carry its burden of persuasion on the other factors. *Bloedorn*, 631 F.3d at 1229. NuVasive has made much about LeDuff's former customers now using or possibly using Alphatec products. But beyond suspicious timing, NuVasive has provided no evidence of LeDuff's direct or indirect responsibility for physicians switching to Alphatec. Without any evidence, NuVasive has not shown it suffers or has suffered any actual or imminent harm because of LeDuff. Nor has it shown that its interests outweigh the harm LeDuff will suffer with the injunction. The Court is hard-pressed to issue the extraordinary and drastic remedy of an

injunction when the record is devoid of evidence to support NuVasive's claim for such relief.

Accordingly, it is now

**ORDERED:**

(1) Plaintiff NuVasive, Inc.'s Motion for Preliminary Injunction Against Defendant Christopher LeDuff (Doc. 7) is **DENIED**.

(2) The parties are **DIRECTED** to advise the Court on or about **November 26, 2019**, on their positions about this case proceeding to arbitration.

**DONE** and **ORDERED** in Fort Myers, Florida this 13th day of November 2019.

*[signature]*
SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies: All parties of record